UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

TRUSTEES OF THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,                 19-cv-0711 (JGK)
PENSION FUND, ANNUITY FUND, AND
TRAINING PROGRAM FUND, ANNA GUTSIN,            MEMORANDUM OPINION
AND ROBERT BONANZA,                            AND ORDER
,

                    Petitioners,

         - against -

A.J.S. PROJECT MANAGEMENT, INC.,

                    Respondent
────────────────────────────────────────

JOHN G. KOELTL, District Judge:

     The Trustees of the Mason Tenders District Council Welfare

Fund, Pension Fund, Annuity Fund, and Training Program Fund,

(the "Funds"); Anna Gutsin in her capacity as the Director of

the Funds; and Robert Bonanza as the Business Manager of the

Mason Tenders District Council of Greater New York (the "Union")

(together with the Funds, and Anna Gutsin, the "Petitioners"),

have filed a petition to confirm an arbitration award (the

"Petition"), pursuant to section 301 of the Labor Management

Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. The

arbitration award was issued by arbitrator Joseph Harris on

January 25, 2018 (the "Award") and was rendered pursuant to a

collective bargaining agreement (the "CBA") involving the Union

and A.J.S. Project Management, Inc. (the "Respondent"). The

Respondent has not opposed the Petition, nor opposed Petitioners' motion for summary judgment and accompanying Local Rule 56.1 Statement. For the reasons explained below, the Petitioners' Petition to confirm their arbitration award is **GRANTED**.

I.

The following uncontested facts are taken from the Petitioners' Petition, motion for summary judgment, and their supporting documents.

The Respondent is a construction contractor, located in New York. Petitioners' Local Rule 56.1 Statement, ECF No. 11 ("Pet.'s R. 56.1 Stmt.") ¶ 5. At all relevant times, the Respondent was an "employer" within the meaning of 29 U.S.C. § 152(2). Petition to Confirm Arbitration Award, ECF No. 1 ("Pet.") ¶ 3. The Funds are "employee benefit plan[s]" and "multiemployer plans," within the meaning of Sections 3(3) and 3(37)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3) & (37)(A). Pet.'s R. 56.1 Stmt. ¶ 1; Pet. ¶ 1. The Funds are organized and operated in accordance with ERISA, with their principal place of business in New York. Pet.'s R. 56.1 Stmt. 1; Pet. ¶ 1. The Funds are each established and maintained pursuant to an Amended and Restated Agreement and Declaration of Trust (collectively, the "Trust Agreements"), and are jointly administered by a Board of

2

Trustees. Pet.'s R. 56.1 Stmt. 1; Pet. ¶ 1. Anna Gutsin is the "administrator" of the Funds. Pet.'s R. 56.1 Stmt. ¶ 2; Declaration of Haluk Savci, ECF No. 11 ("Sacvi Decl.") ¶ 4. The Union is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, that represents employees in an industry affecting commerce within the meaning of section 501(1) of the LMRA, 29 U.S.C. § 142(1) and section 3(4) of ERISA, 29 U.S.C. § 1002(4), and is the certified bargaining representative for certain employees of the Respondent. Pet.'s R. 56.1 Stmt. ¶¶ 3-6; Sacvi Decl. ¶¶ 5-8. The Union maintains its principal place of Business in New York, and Robert Bonanza is the business Manager of the Union and brings this action, in his representative capacity, pursuant to N.Y. General Associations Law § 12. Pet.'s R. 56.1 Stmt. ¶ 4; Sacvi Decl. ¶ 6.

In July 2008, the Respondent entered into an Independent Collective Bargaining Agreement (the "CBA") with the Union, for the period for July 1, 2008 to June 30, 2011. Pet.'s R. 56.1 Stmt. ¶ 5; Sacvi Decl. ¶ 7, Ex. 2, Art. XII. The Respondent and Union signed an amendment to the Agreement in 2010. Sacvi Decl. ¶ 7, Ex. 2. The CBA contained an "evergreen" clause, providing that the CBA would continue to be renewed on an annual basis, unless either party provided written notice. Sacvi Decl. ¶ 7, Ex. 2, Art. XII. The Respondent also consented to be bound to the New York City School Construction Authority's Project Labor

3

Agreement covering Specified Construction Work Under the Capital Improvement Program for Fiscal Years 2009-2014 ("PLA") with the Building and Construction Trades Council of Greater New York, of which the Union is a member. Pet.'s R. 56.1 Stmt. ¶ 5; Sacvi Decl. ¶ 7, Ex. 2, PLA. Article VI of the CBA and Article 11, Section 2(A) of the PLA each require employers to pay timely benefit contributions to the Funds for all covered employees. Pet.'s R. 56.1 Stmt. ¶ 9; Savci Decl. ¶ 11, Ex. 2, CBA, Art. VI & PLA, Art. 11. Under Art. 11, Section 2(B) of the PLA and Article VI, Section 15(i) of the CBA, the Respondent agreed to be bound to the terms and conditions of the Fund's Trust Fund Agreements. Pet.'s R. 56.1 Stmt. ¶ 10; Savci Decl. ¶ 12, Ex. 2, CBA, Art. 15(i). Section 15(i) of the CBA specifically includes consent to be bound to the Trust Fund Agreement's arbitration procedures for allegedly delinquent contributions. Pet.'s R. 56.1 Stmt. ¶ 10; Savci Decl. ¶ 12, Ex. 2, CBA, Art. 15(i). The Trust Fund Agreements provide that the Funds' trustees have the power to take steps to collect allegedly delinquent contributions, including the option of commencing arbitration proceedings. Pet.'s R. 56.1 Stmt. ¶¶ 11-14; Savci Decl. ¶¶ 13-15, Exs. 2, 3, 4.

The underlying dispute at issue here arose after the Petitioners' auditors conducted an audit of the Respondent, covering the period from September 1, 2012 through October 13,

4

2013, and found that the Respondent had failed to pay $160,004.34 in contributions, $12,967.25 in dues and PAC contributions, $31,257 in current interest, $841.76 in interest on late contributions, and $14,933.74 in imputed audit costs. Pet.'s R. 56.1 Stmt. ¶ 18; Savci Decl. ¶ 21, Ex. 6. The Funds served a notice and demand for arbitration, dated December 21, 2017, on the Respondent, and the arbitrator notified the parties on December 24, 2017 via mail and email, that a hearing would be held on the matter on January 18, 2018. Pet.'s R. 56.1 Stmt. ¶ 16; Savci Decl. ¶ 19, Ex. 6. The Respondent failed to respond, to remediate the findings of the audit, or to make an appearance at the January 18, 2018 hearing. Pet.'s R. 56.1 Stmt. ¶¶ 16-17; Savci Decl. ¶¶ 19-20, Exs. 1, 6. The arbitrator found in favor of the Petitioners, based on the unrebutted evidence and hearing record that the Respondent failed to pay the required benefit contributions. Pet.'s R. 56.1 Stmt. ¶ 19; Savci Decl. ¶ 22, Ex. 1. For the Award which the Petitioners seek to confirm, the arbitrator determined that the Respondent is liable for a total of $284,119.59, consisting of $160,004.34 of delinquent Fund contributions, $12,967.25 in dues and PAC contributions, $31,257.50 of "Current Interest," $62,515.00 of liquidated damages, plus interest for late payments, together with attorney's fees and other costs. Savci Decl. ¶ 22, Ex. 1.[1]

---

[1] The Petitioners have informed the Court that the arbitrator's award of

The Petitioners represent they subsequently made a further demand for payment, and then initiated this lawsuit to enforce the Award. Pet.'s R. 56.1 Stmt. ¶ 20; Savci Decl. ¶ 23. The Respondent has failed to respond to this Court's Orders dated April 14, 2020 and September 12, 2020. See ECF Nos. 7, 14. The Petitioners have filed a motion for summary judgment which is unopposed.

II.

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Instead, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice

---

$62,515.00 in liquidated damages involved a calculation error and noted that the correct liquidated damages amount should be $31,257.50. ECF No. 16.

6

to overturn his decision." Int'l Brotherhood of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting Misco, 484 U.S. at 38); Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

The Respondent has failed to respond to the Petition at issue and the motion for summary judgment, and both are unopposed. However, the Court must do more than simply issue a default judgment in favor of the Petitioners. The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record . . . [and] the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *2 (S.D.N.Y. May 29, 2018).

### III.

In this case, the arbitrator's award was not the arbitrator's "own brand of industrial justice." See Misco, 484 U.S. at 36 (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). The arbitrator found that uncontroverted testimony and evidence established that the Respondent was bound by the CBA with the Union and the PLA and that the Respondent was delinquent in making payments required under the CBA and PLA, and was obligated to pay a delinquency assessment and interest, plus other costs associated with the delinquency and with the arbitration. Savci Decl., Ex. 1. The arbitrator determined that the Respondent is liable for a total of $284,119.59, consisting of $160,004.34 of delinquent Fund contributions, $12,967.25 in dues and PAC contributions,

$31,257.50 of "Current Interest," $62,515.00 of liquidated damages, plus interest for late payments, together with attorney's fees and other costs. Because the arbitrator's award of $62,515.00 in liquidated damages involved a calculation error, the Petitioners have requested that this Court correct the liquidated damages amount to be $31,257.50. See ECF No. 16. Based on the limited review that is appropriate of an unopposed petition to confirm an arbitration award, there is no genuine dispute of material fact and the Award should be confirmed, with the corrected liquidated damages amount.

Further, the Petitioners are also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (citing 28 U.S.C. § 1961(a)). The Petitioners have not requested attorney's fees relating to this proceeding.

## CONCLUSION

For the reasons explained above, the Petition to confirm the arbitration award is **GRANTED** and the underlying arbitration award is ordered confirmed.

The Clerk is directed to enter Judgment confirming the Award, dated January 25, 2018, attached as Exhibit 1 to the Petition, and to enter Judgment in favor of the Petitioners and

9

against the Respondent, awarding Petitioners $252,862.09, consisting of $160,004.34 of delinquent Fund contributions, $12,967.25 in dues and PAC contributions, $31,257.50 of "Current Interest," $31,257.50 of liquidated damages, plus interest for late payments, together with attorney's fees and other costs.

The Clerk is directed to enter Judgment accordingly and to close this case.

**SO ORDERED.**

**Dated:**   **New York, New York**
            **November 6, 2020**

_____
John G. Koeltl
United States District Judge